**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 25-cv-03294-REB

B.S.H.,

 Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

 Defendant.

---

**ORDER AFFIRMING COMMISSIONER**

---

**Blackburn, J.**

 The matter before me is plaintiff's **Complaint** [#1],[1] filed October 17, 2025, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument.[2] I affirm.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

 Plaintiff alleges she is disabled as a result of a host of physical impairments, most relevantly for purposes of this appeal, chronic obstructive pulmonary disease ("COPD") and major depressive disorder.  After her application for disability insurance

---

[1]  "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

[2]  Although the parties consented to have the matter referred to and determined by a United States magistrate judge (*see* [#9], filed December 16, 2025), I exercise my discretion under **D.C.COLO.LAPR** 72.2(d) to decline to enter an order of reference under 28 U.S.C. § 636(c).

benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on December 10, 2024.  At the time of the hearing, plaintiff was 64 years old.  She has a high school education plus two years of college and past relevant work experience as a cashier.  She has not engaged in substantial gainful activity since January 1, 2022, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the medical evidence established plaintiff suffered from severe impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations; other alleged impairments were found to be non-severe.  The ALJ determined plaintiff had the residual functional capacity to perform a range of light work with postural and environmental limitations and which required the ability to remember understand, and carry out simple instructions and tolerate only occasional changes in a routine work setting.  Based on that determination, the ALJ concluded plaintiff could return to her past relevant work as generally performed.  He therefore found plaintiff not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Acting Commissioner.  *Id.*

### III. LEGAL ANALYSIS

In two related arguments, plaintiff claims the ALJ erred in failing to properly assess her subjective complaints regarding the alleged impact of impairments on her functional abilities, and specifically by improperly discounting testimony and other evidence she claims support limitations in her ability to interact with the public. Finding no such error in the ALJ's decision, I affirm.

Plaintiff claims the ALJ failed to assess her statements regarding her alleged symptoms appropriately as required by *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), and **Social Security Ruling** ("**SSR**")16-3p, 2016 WL 1119029 (SSA March 16, 2016). (*But see* Tr. 23 (acknowledging duty to follow this process).) These authorities require that if the ALJ finds a medically determinable impairment which reasonably could be expected to produce the claimant's alleged symptoms, he then must evaluate, based on all the evidence, whether the intensity and persistence of the alleged symptoms truly are disabling. *Luna*, 834 F.2d at 163-64; **SSR** 16-3p, 2016 WL 1119029 at *2. *See also* 20 C.F.R. § 404.1529(c). In making that determination, the ALJ should consider a variety of factors, 20 C.F.R. § 404.1529(c)(3),[3] although he need not provide "a formalistic factor-by-factor recitation of the evidence," *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), or discuss factors for which "there is no information in the evidence of record," **SSR** 16-3p, 2016 WL 1119029 at *7.

---

[3] This non-exhaustive list includes consideration of: (1) the claimant's activities of daily living; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors, including psychological disorders; (4) the persistence of the claimant's attempts to find relief for these symptoms; (5) the regularity of the claimant's contact with medical professionals; (6) the type, dosage, effectiveness, and side effects of any medication; (7) treatment, other than medication, the claimant receives (or has received for her symptoms; (8) the claimant's willingness to try prescribed treatment; and/or (9) any measures the claimant uses or has used to relieve her symptoms. 20 C.F.R. § 404.1529(c)(3). *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Plaintiff mainly takes issue with the ALJ's assessment of the credibility of her reports regarding her activities of daily living. "[A]ctivities of daily living . . . bear on a plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations." *Ghini v. Colvin*, 82 F.Supp.3d 1224, 1234 n.11 (D. Colo. 2015) (citations and internal quotation marks omitted). The ALJ considered plaintiff's subjective reports as to the allegedly limiting effects of her COPD and depression (*see* Tr. 49-67 (hearing transcript), 280-287 (function report)), but found them not entirely credible based, in part, on his finding that she could perform most basic daily tasks independently and was able to care for her dogs and her sister, drive, shop, and manage money. (Tr. 24.)

I agree that the ALJ's assessment of these complaints puts a rather benign spin on plaintiff's actual allegations. In fact, plaintiff cares for her sister just eight hours a week, which cannot fairly be characterized, as the ALJ did, as "part-time" work. (Tr. 23.) Moreover, plaintiff actually averred that, due to her COPD and depression, she quickly becomes short of breath when performing household tasks and shopping and requires long periods of rest to recover; engages in minimal personal care; has difficulty sleeping; and gets paranoid being around other people. The ability to engage in limited household and other activities of daily living does not necessarily show an ability to perform substantial gainful activity on a regular work schedule. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Ryan v. Colvin*, 214 F.Supp.3d 1015, 1021 (D. Colo. 2016).

Plaintiff's argument would have traction if her activities of daily living were the sole reason the ALJ gave for discounting her subjective complaints, but it was not. For

6

the ALJ also noted that plaintiff received only conservative medical care and that her impairments responded to the treatments she did receive.[4] (Tr. 24.) That basis for discrediting plaintiff's subjective complaints is fully supported by the record and provides substantial evidence for the ALJ's decision.

Where only one of a number of reasons undergirding the ALJ's credibility determination is unsupported, the remainder may still constitute substantial evidence in support of that conclusion. "[W]hen several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. Dec. 3, 1997). On the other hand, "[i]t is only when some critical mass of the factors cited by the ALJ are found unsupportable that it becomes inappropriate to weigh the remainder." *Castolenia v. Berryhill*, 2019 WL 1991949 at *6 (D. Colo. May 6, 2019).

An impairment for which a claimant has received only conservative or infrequent treatment is not disabling, *see Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (conservative treatment); *Romero v. Colvin*, 2015 WL 3542783 at *8 (D. Colo. June 5, 2015) (sporadic treatment), as is one which is responsive to treatment, *Pacheco v.*

---

[4] At several points, the ALJ mentioned that plaintiff continued to smoke during the period of her alleged disability. (*See* Tr. 26, 28.) It does not appear, and plaintiff does not contend, that the ALJ relied on her continued smoking as further evidence undermining the credibility of her complaints, and it would have been error to do so unless he also considered any evidence that a medical source had advised plaintiff to reduce or quit smoking or that quitting would have lessened plaintiff's symptomology. *See Harrison v. Colvin*, 2015 WL 5730611 at *17 (D. Kan. Sept. 30, 2015); *McNeill v. Astrue*, 2010 WL 292739 at *5 (W.D. Okla. May 13, 2010), *adopted*, 2010 WL 2927395 (W.D. Okla. July 22, 2010); *Moses v Barnhart*, 321 F.Supp.2d 1224, 1232 (D. Kan. 2004).

*Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991). Here, the medical evidence in the record and the ALJ's thorough and careful review of that evidence more than adequately support his conclusion that plaintiff received only conservative treatment for her allegedly disabling impairments and that what treatment she did receive was efficacious.

For example, prior to her alleged date of onset, in March 2020, plaintiff presented at the emergency room with a persistent cough and shortness of breath. Plaintiff apparently sought treatment for breathing problems at some time prior, because it seems she already had been prescribed an inhaler, although she had not used it in over a year. Plaintiff was administered a breathing treatment, after which her wheezing resolved and she reported feeling much better. She was given prescriptions for oral steroids and an aerosol inhaler and discharged in stable condition. (Tr. 402-403.)

In addition, as the ALJ observed, despite alleging disability beginning January 1, 2022, plaintiff sought no medical care until the following November. (Tr. 24.) She did not seek to establish treatment for COPD until March 2023, more than a year after her alleged date of onset. (Tr. 739.) At that time, she was found to be in no acute distress as a result of COPD and was referred to a pulmonologist for further evaluation and management. (Tr. 742.) Following that appointment, plaintiff was put on a course of prednisone and inhalers and reported "doing much better." (Tr. 754, 756.) It appears she was, as at an emergency department visit the following month for complaints of abdominal pain, plaintiff denied increased shortness of breath and had no other medical complaints or concerns. (Tr. 475.)

8

In October 2022, plaintiff told consultative examiner Dr. Kerry Kamer that she had not used an inhaler in the past year and was not under the care of a pulmonologist. (Tr. 467.)  At a second consultative exam conducted in August 2023, plaintiff reported to Dr. Sonja Stilp that her COPD symptoms were "significantly improved" and "adequately managed" with inhaler medication.  (Tr. 783.)[5]  Even by the time of the hearing, plaintiff had only recently sought (but had not yet received) supplemental oxygen to help with sleeping at night; she acknowledged that no medical source had told her she needed supplemental oxygen for daytime use.  (*See* Tr. 23, 24, 60-62.)

Likewise, plaintiff's depressive symptoms responded positively to treatment and appear from the evidence to have been under adequate control.  The results of the two psychological consultative examinations in the record, which the ALJ reviewed thoroughly (Tr. 25-26, 27), buttress that conclusion.  At the first, conducted in October 2022, plaintiff told Dr. Frederick Leidal she was first diagnosed with depression in 2000 and was receiving no mental health treatment.  Instead, she primarily was seeking benefits due to the effects of COPD.  (Tr. 457.)  Although plaintiff was hospitalized on a 72-hour involuntary psychiatric hold in May 2023 for suicidal ideation (Tr. 492-512), following her release, she received two months of out-patient treatment with

---

[5]  The examinations themselves showed benign findings related to COPD.  Both examiners found plaintiff's respiration clear to auscultation bilaterally and free of wheezes, crackles, or rales.  (Tr. 470, 785.)  Dr. Kamer described her examination of plaintiff as "unremarkable" and concluded plaintiff's impairments were stable and that she did not require active medical care at that time.  (Tr. 25, 472.)  Dr. Stilp imposed no restrictions whatsoever on plaintiff's ability to sit, stand, or walk, and opined she could lift and carry 10 to 20 pounds continuously (Tr. 788), although the ALJ found this opinion only partially persuasive insofar as it failed to impose any postural or environmental limitations (Tr. 28).

medication, which significantly improved her symptoms.  (Tr. 24, 533 (discharge summary from out-patient therapy; plaintiff "responded very well" to medication and "report[ed] significant improvement in her depression").)  In August 2023, plaintiff told Dr. Stilp she continued to "work[] with a behavior therapist one time weekly with improvement of symptoms."  (Tr. 783.)

In July 2023, plaintiff told a second consultative psychiatric examiner, Dr. Russell Thye, that she began experiencing symptoms of depression in her teens and was diagnosed in her early 20s.  (Tr .778; *cf.* Tr. 457 (reporting to Dr. Leidal that she was first diagnosed with depression in her early 20s).)  She was taking trazodone for depression (Tr. 778) and acknowledged that "[t]he big thing that keeps me from working is my COPD" (Tr. 776).  Despite plaintiff's complaints of having a hard time staying focused "[i]f I don't stick with my routine," Dr. Thye found her ability to maintain attention and persist in simple work-related tasks unimpaired and her ability to complete simple concentration tasks and her processing speed to be within normal limits.  She was found mildly impaired in her ability to carry out short simple instructions and relate to co-workers and the public and moderately impaired in her ability to adapt to new situations.  (Tr. 776-780.)[6]

Having thus linked his conclusion to the evidence of record, the ALJ's credibility assessment is entitled to substantial deference.  *See Hardman v. Barnhart*, 362 F.3d

---

[6]  The ALJ found this assessment consistent with the medical record and therefore persuasive insofar as it found plaintiff capable of understanding, remembering, and carrying out simple instructions and tolerating occasional changes in a routine work setting.  (Tr. 29.)

676, 679-80 (10th Cir. 2004). Plaintiff points to no evidence in the record, aside from her own statements, which support a conclusion that she has trouble interacting with the public. Given the evidence that plaintiff's depression was well-controlled on medication and that her complaints regarding her mental impairments were largely centered around her inability to focus and/or concentrate and her problems with memory, both of which were accounted for in the residual functional capacity determination, the ALJ did not err in not including any limitation on plaintiff's ability to interact with the public in her residual functional capacity.

Ultimately, and even giving plaintiff every benefit of the doubt, her arguments amount to nothing more than a disagreement with the ALJ's conclusions from the evidence. This court cannot reweigh the evidence in the way entertaining those arguments would require. Even where the evidence admits of two or more conflicting views, which is not truly the case here, the ALJ's choice between them cannot be error. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Grandusky v. Berryhill*, 2018 WL 2722465 at *5 (D. Colo. June 6, 2018). Plaintiff has shown no more than this

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated April 28, 2026, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge

11